NOTICE

Decision filed 07/24/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241226-U

NO. 5-24-1226

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| DOUGLAS HUBERT and MARILYN HUBERT, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellants, | ) ) | St. Clair County. |
| v. | ) ) | No. 22-LA-922 |
| ST. CLAIR NISSAN, D/B/A AUFFENBERG NISSAN AND AUFFENBERG DEALER GROUP, | ) ) ) | Honorable Heinz M. Rudolf, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE CLARKE delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*: The circuit court's grant of summary judgment was proper where the fact in dispute was not material, because the disputed fact went only to an unpled theory of liability and therefore could not defeat the motion for summary judgment.

¶ 2    The plaintiffs, Douglas Hubert and Marilyn Hubert, appeal from an order of the St. Clair County Circuit Court entering summary judgment in favor of the defendants, Auffenberg Nissan, which dismissed the Huberts' first amended complaint that sought recovery under theories of common law fraud and the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2020)).

---

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992). Justice Clarke was substituted on the panel and has read the briefs.

1

¶ 3                                    I. BACKGROUND

¶ 4     In June of 2015, the plaintiffs, Douglas and Marilyn Hubert, purchased a 2014 Jeep Grand Cherokee from defendant, Auffenberg Nissan. At the time the Huberts purchased the Jeep, they were given a copy of an advertisement for the Jeep that stated that it was a "select certified" used motor vehicle, and they were also given a copy of a clean Carfax vehicle history report for the Jeep. The Carfax report contained a standard disclaimer that it was based only on information reported to Carfax as of June 15, 2015, and that therefore other information about the vehicle, including problems, may not be included in the report. The Huberts were also informed that the Jeep had passed Auffenberg's 142-point used vehicle inspection.

¶ 5     According to an affidavit prepared by Carfax's custodian of records, Carfax did not receive information showing that the vehicle had been involved in two prior accidents until after the Huberts had already purchased it. Carfax's records indicate that the first accident occurred on March 20, 2014, but was not reported to Carfax by a third-party source until July 2017. The second accident occurred on March 26, 2015, and was reported to Carfax in October 2015.

¶ 6     In July of 2022, the Huberts traded-in the Jeep at Plaza Audi in Creve Coeur, Missouri. During the trade-in process, Plaza Audi retrieved an updated copy of the Jeep's Carfax vehicle history report. Plaza Audi then informed the Huberts about two previous accidents that appeared in the Carfax report, and informed the Huberts that the accidents would negatively impact the Jeep's trade-in value.

¶ 7     On October 28, 2022, the Huberts filed a three-count complaint against two defendants, Auffenberg Nissan and Carfax, Inc., alleging (1) a violation of section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2020)) by Auffenberg, (2) a violation of the Consumer Fraud Act by

2

Carfax, Inc., and (3) negligent misrepresentation against Carfax. On January 3, 2023, the Huberts filed to partially dismiss defendant Carfax, Inc. from the case without prejudice following the creation of the above-mentioned affidavit by its custodian of records explaining when Carfax became aware of the two accidents.

¶ 8     On June 2, 2023, the Huberts filed their first amended complaint. Count I of the amended complaint alleged a violation of the Consumer Fraud Act against the only remaining defendant, Auffenberg, on the theory that Auffenberg knew as a result of the 142-point inspection that the vehicle had been in an accident and that Auffenberg concealed that fact, as well as misrepresented the results of the clean Carfax to them by saying the clean Carfax meant the vehicle had never been in a wreck. Count II of the complaint alleged common law fraud against Auffenberg on the same theory as Count I[1].

¶ 9     On January 29, 2024, Auffenberg filed a motion for summary judgment and a memorandum in support thereof. In it, Auffenberg sought summary judgment because the Huberts could not prove their theory of the case because Douglas had admitted under oath that Auffenberg did not have actual knowledge that the vehicle had been wrecked and had subsequently hidden that fact from the Huberts, a fact upon which their claims as pled relied.

¶ 10     On February 23, 2024, the Huberts filed a response to Auffenberg's motion for summary judgment. In it, the Huberts argued that Auffenberg either (1) did not perform the 142-point inspection, (2) did not perform it with the rigor that they represented, or (3) performed the inspection and learned the vehicle had been in at least one accident but failed to disclose it. Additionally, on September 27, 2024, following the depositions of Lucas Kimme and Jason

---

[1]We note, as Auffenberg points out in their brief, the Huberts do not raise any argument as to Count II or Common Law Fraud on appeal, and therefore we will treat it as abandoned.

Redman, the Huberts filed a supplement to their response wherein they argued "[Auffenberg] represented to the [Huberts] that the 142-point inspection meant the vehicle had not been involved in any previous accidents, with knowledge that the 142-point inspection did not rule out prior accidents and was not intended to rule out prior accidents."

¶ 11     On November 13, 2022, the circuit court entered an order granting Auffenberg summary judgment on the basis that "Auffenberg did not conceal or misrepresent any fact" and "disclosed the information available to it". Plaintiff timely filed a notice of appeal on November 13, 2024.

¶ 12                                        II. ANALYSIS

¶ 13     On appeal, the Huberts argue that the circuit court erred in granting Auffenberg Nissan's motion for summary judgment. Specifically, the Huberts contend that a question of material fact exists based on testimony that Auffenberg told them the Jeep they were purchasing was a "certified select" used vehicle that had passed a 142-point inspection, meaning it had not been in any accidents. The Huberts then contend that because the 142-point inspection was not intended to rule out previous accidents, but was merely a safety inspection, and because the car had been in two previous accidents, that there exist sufficient facts to find Auffenberg liable under the Illinois Consumer Fraud Act for material misrepresentations related to the condition of the car.

¶ 14     In response, Auffenberg argues that the circuit court did not err in granting its motion for summary judgment. Specifically, Auffenberg contends that the Huberts have admitted that Auffenberg had no actual knowledge of prior accidents and the Huberts have no evidence that Auffenberg concealed the accidents from them. Additionally, Auffenberg contends that the Huberts are attempting, for the first time on appeal, to argue that representations made by Auffenberg regarding the pre-sale 142-point inspection were deceptive.

4

¶ 15    In reply, the Huberts first contend that there is a question of fact as to whether Auffenberg told them that the vehicle was "certified select" and had passed a 142-point vehicle inspection, which meant the vehicle had never been in a wreck, when it in fact had been. Second, the Huberts contend that their first amended complaint supports their theory of liability.

¶ 16    We begin our analysis by noting that an appeal from a summary judgment order is subject to *de novo* review. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Seymour*, 2015 IL 118432, ¶ 42. Material facts are facts that might affect the outcome of the case under the applicable substantive law. *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 38. Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Seymour*, 2015 IL 118432, ¶ 42. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Seymour*, 2015 IL 118432, ¶ 42. On a motion for summary judgment, the trial court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party. *Seymour*, 2015 IL 118432, ¶ 42. As a result, summary judgment is not appropriate (1) if "there is a dispute as to a material fact," (2) if "reasonable persons could draw divergent inferences from the undisputed material facts," or (3) if "reasonable persons could differ on the weight to be given the relevant factors" of a legal standard. (Internal quotation marks omitted.) *Seymour*, 2015 IL 118432, ¶ 42.

¶ 17    A defendant moving for summary judgment, as is the case here, may meet the initial burden of production either by affirmatively showing that some element of the case must be resolved in the defendant's favor or by demonstrating the absence of evidence supporting the plaintiff's position on one or more elements of the cause of action. *Thai*, 2020 IL App 1st 192408, ¶ 39. The

5

plaintiff is not required to prove their case at the summary judgment stage; to survive a motion for summary judgment, one must present a factual basis that would arguably entitle them to a judgment. *Thai*, 2020 IL App 1st 192408, ¶ 39. On appeal, this court will affirm the trial court's decision to grant summary judgment only if, after scrutinizing the record, we are absolutely convinced that there is no genuine issue as to any material fact and that the movant was entitled to judgment as a matter of law. *Thai*, 2020 IL App 1st 192408, ¶ 39.

¶ 18    Here, in arguing that there is a question of fact that would preclude summary judgment, the Huberts direct our attention to the deposition testimony of Douglas, where he testified as follows:

> "[MR. PIERCE (ATTORNEY FOR AUFFENBERG)] Q. Okay. Now, you've used a term in this—the document uses the term certified select or select certified. Did anybody explain to you what that meant?
> [MR. DOUGLAS HUBERT] A. That meant the car had been inspected. 142-point inspection gone through. So everything should have worked. Everything should have been fine. Car was never wrecked. They gave me CarFax–clean CarFax. They stated–not on this brochure, but on the other one, that it was a select certified car. It was a select certified lot where they put their best cars.
> Q. Okay. I'm going to repeat the question. I want you to listen carefully to the question. Did they explain to you—and if so who explained to you—what select certified or certified select meant?
> A. That the car wasn't wrecked.
> Q. Okay. Is that the phrase they used?
> A. Yes, it was.
> Q. So they said that the only thing that certified select means is it hasn't been wrecked?
> A. No. The car has been gone through and inspected."

¶ 19    The Huberts also direct our attention to the deposition testimony of Luke Kimme, a former employee of Auffenberg, who testified as follows:

> "[MR. DUREE (ATTORNEY FOR THE HUBERTS)] Q. The third exhibit I sent you is part of the deposition transcript of Douglas Hubert, and I referred you to pages 8 through 13. Did you have a chance to review that?
> [MR. LUKE KIMME (THE WITNESS)] A. I did.
> Q. And do you have any reason to disagree with anything that Douglas Hubert said from pages 9 through 13 of his deposition?

6

A. Let's see. I thought there was one thing, but it may not have been in those pages. Give me one second here.

Yeah. No. Within those pages, everything is—I wouldn't really—let me see. Hold on. Yeah. I mean everything in there is fine.

Q. Let me read these questions and answers in Douglas Hubert's deposition just to be sure that you don't have any reason to disagree with what he said.

A. Sure.

Q. Beginning at page 11, the question was by Mr. Pierce. Now, you've used the term in this—and there's a dash—the document uses the term certified select or select certified. Did anybody explain to you what that meant?

And Douglas Hubert's answer was—I will read the first part of it. Answer: That meant the car had been inspected. That 142-point inspection gone through. So everything should have worked. Everything should have been fine. Car was never wrecked.

A. Yeah.

Q. Do you have any reason to disagree with that?

A. No.

* * *

[MR. PIERCE (ATTORNEY FOR AUFFENBERG)] Q. Now, when Mr. Duree [(attorney for the Huberts)] asked you some questions about Mr. Huberts's testimony, I want to be clear as to what you would not have told Mr. Hubert. When you discussed—I mean obviously you didn't know the 100 percent history of a vehicle, correct?

A. Correct.

* * *

Q. So when Mr. Hubert claims that you told him that certified select meant that the car had not been wrecked, that not an accurate statement of what you told him?

MR. DUREE: Objection, asked and answered.

THE WITNESS: No. And that's the part that I was talking about too. I knew there was one statement in there that was just a little bit off of whatever. We would just—the way that we would describe it is it has a clean CarFax is how we would present that to a customer.

¶ 20    The Huberts contend on appeal that the above testimony proves, or at the very least creates a question of fact about, whether Affenberg held out to the Huberts that the car had never been in a wreck based on its certification of the car as a certified select vehicle and the 142-point inspection. While we disagree that the testimony conclusively proves Auffenberg informed the Huberts that certified select meant the car had never been wrecked, we find that it is enough to create a question of fact. However, just because there is a question of fact does not mean that plaintiff survives summary judgment; instead, as noted above, the question of fact must be

7

material, meaning it must be capable of, though not required to, change the outcome of the case under the applicable substantive law. *Thai*, 2020 IL App 1st 192408, ¶ 38.

¶ 21    To prevail under the Consumer Fraud Act, the plaintiff must prove the following elements: (1) a deceptive act or practice by defendant, (2) defendant's intent that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d. 482, 501 (1996). Plaintiff's reliance is not an element of statutory consumer fraud, but a valid claim must show that the consumer fraud proximately caused plaintiff's injury. *Connick*, 174 Ill. 2d. at 501.

¶ 22    Furthermore, a complaint alleging a violation of Consumer Fraud Act must be pled with the same particularity and specificity as is required under common law fraud. *Connick*, 174 Ill. 2d. at 501. To successfully plead common law fraud, the complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. *Connick*, 174 Ill. 2d at 496-97.

¶ 23    Here, upon our review of the Huberts' first amended complaint, we note that the Huberts failed to specifically plead a theory that Auffenberg's deceptive act was to "[represent] to the Huberts that the 142-point inspection meant the vehicle has not been involved in any previous accidents with knowledge that the 142-point inspection did not rule out prior accidents and was not intended to rule out prior accidents." Instead, the Huberts raised this theory in their supplemental response to Auffenberg's motion for summary judgment.

¶ 24    We note, however, that Illinois courts have observed that "it is axiomatic that summary judgment motions are limited to the issues raised in the complaint, and a plaintiff cannot raise new issues not previously pled in its complaint in order to obtain, or defeat a motion for, summary

judgment." *800 S. Wells Commercial LLC v. Cadden*, 2018 IL App (1st) 162882, ¶ 43. A response to a motion for summary judgment is just not the proper vehicle to assert new factual allegations and legal theories. *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 55. They have further observed that "[w]hen ruling on a motion for summary judgment, the trial court looks to the pleadings to determine the issues in controversy. [Citation.] If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint. [Citation.]." *Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008). Thus, the court in *Abramson* affirmed the grant of summary judgment where, as here, the plaintiff attempted to introduce an unpled legal theory in response to a motion for summary judgment. *Abramson*, 2018 IL App (1st) 180081, ¶ 55. Accordingly, we find that summary judgment in favor of Auffenberg was proper.

¶ 25                                    III. CONCLUSION

¶ 26    We find that the Circuit Court of St. Clair County's grant of Auffenberg's motion for summary judgment was proper where there was no genuine dispute of material fact, because the disputed fact was material only to an unpled theory of liability. Therefore, the dispute of fact was not material to the case as pled and could not defeat the motion for summary judgment.

¶ 27    Affirmed.

9